T.C. Summary Opinion 2001-52


UNITED STATES TAX COURT


ROGER F. AND CAROLYN R. ELLIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8894-99S.                    Filed April 9, 2001.


    Roger F. Ellis, pro se.

    <u>Louis H. Hill</u>, for respondent.


    CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for 1995 and 1996.  Rule references are to
the Tax Court Rules of Practice and Procedure.  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined deficiencies of $2,435 and $3,545 in petitioners' Federal income taxes for 1995 and 1996, respectively. The issues for decision for each year in issue are: (1) Whether petitioners are entitled to various deductions claimed on a Schedule C; and (2) whether petitioners are entitled to a charitable contribution deduction greater than the amount allowed by respondent.

Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. At the time the petition was filed, they resided in Dayton, Ohio. References to petitioner are to Roger F. Ellis.[1]

Petitioner holds undergraduate and graduate degrees in electrical engineering. In 1989, at the age of 44, after 21 years of military service, petitioner retired from the United States Air Force (USAF). While in the USAF, petitioner was involved in the acquisition of missiles, aircraft, and, as he testified at trial, "things of that type". His military assignments also included flight and systems tests.

Shortly after retiring from the military, petitioner began

_____

[1] Carolyn R. Ellis neither signed the stipulation of facts nor appeared at trial. The case will be dismissed as to her for lack of prosecution. The decision to be entered with respect to her will reflect the disposition of the issues considered in this opinion, as well as those issues agreed upon by respondent and petitioner.

to look for employment as a technical consultant or engineering manager for private sector defense contractors. During the years in issue, petitioner's search for employment included driving to, or otherwise contacting, numerous companies that might have a need for the types of services he offered. Petitioner apparently worked for a time during 1991, but after that he remained unemployed until January 1999 when he was offered and accepted employment as a civilian engineer with the USAF.

Petitioner's records indicate that, in connection with his search for employment, he visited the offices of Modern Technologies Corp. in Dayton, Ohio, numerous times, perhaps as often as once a month, during 1995. In response to an inquiry made by respondent's agent during the examination, that company indicated that petitioner had not made any contacts with it regarding employment during 1995 or 1996.

Petitioners have three daughters. During the years in issue, one attended college in Birmingham, Alabama; one attended college in Williamsburg, Kentucky; and the third was employed in Columbia, Missouri. Three or four times each year, petitioner or petitioners traveled to those cities where one of their daughters was living.

Petitioners are, and were during the years in issue, active members of the First Baptist Church of Fairborn, Ohio (the Church). Carolyn R. Ellis was employed as a secretary by the

Church during 1995 and 1996. Petitioner serves as one of its deacons. He is the Church historian and, as such, provides services as a photographer. Petitioners regularly attended Church services and made cash and personal property contributions to it during 1995 and 1996. As an official of the Church, petitioner attended various Church meetings regularly.

During both years in issue, petitioners also made cash and personal property donations to various other organizations. They maintained at least one checking account (the account). Some of the cash donations made to the Church and other organizations were made through the account. It appears that canceled checks drawn on the account were not routinely returned to petitioners. Instead, a carbon copy of the check was created each time a check was written, and petitioners retained those carbon copies. For the year 1995, there are carbon copies of 11 checks, each for $250, payable to the Baptist Health Foundation. According to the records of the Baptist Health Foundation, petitioners made no donations to that organization in 1995 or 1996.

Petitioners filed a timely joint Federal income tax return for each year in issue. Included with each return is a Schedule C, Profit or Loss from Business, on which they reported the following items:

|                          | 1995    | 1996    |
|--------------------------|---------|---------|
| Gross income             | - 0 -   | - 0 -   |
|                          |         |         |
| Advertising              | $53     | $82     |
| Car & truck              | 4,756   | 4,559   |
| Depreciation             | 2,431   | 1,091   |
| Insurance                | 178     | 113     |
| Legal & prof. svcs.      | 139     | 204     |
| Office expense           | 799     | 635     |
| Repairs & maintenance    | 295     | 52      |
| Supplies                 | 325     | 603     |
| Taxes & licenses         | 158     | 121     |
| Travel                   | 1,100   | 1,722   |
| Meals & ent. (less 50%)  | 719     | 694     |
| Utilities                | 2,093   | 2,296   |
| Total loss               | 13,046  | 12,172  |

The Schedules C relate to petitioner's activities in seeking employment as a consulting engineer. The deductions claimed for travel and meals include trips taken by petitioner, or petitioners, to Birmingham, Alabama, Williamsburg, Kentucky, and Columbia, Missouri. The deductions for utilities relate to the use of a portion of petitioners' residence as an office. The deductions for car and truck expenses were computed by using the applicable standard mileage rate. For each year, petitioner's records indicate that he typically drove 35 to 50 miles per day, 5 days a week, in order to make personal contact with prospective employers.

For each year, petitioners elected to itemize deductions and included a Schedule A, Itemized Deductions, with each return. Among other deductions claimed on the Schedules A, petitioners claimed deductions of $8,328 and $10,827 for 1995 and 1996,

respectively, for cash gifts to charities.

In the notice of deficiency, respondent disallowed:
(1) All of the deductions claimed on the Schedules C; (2) $2,245
of the charitable contribution deduction claimed for 1995; and
(3) the entire charitable contribution deduction claimed for
1996.  Among other reasons, the disallowances were based upon
lack of substantiation.  Other adjustments made in the notice of
deficiency are not in dispute.

Discussion

 A. Schedule C Deductions

For each year, petitioners claimed numerous deductions on a
Schedule C.  All of the deductions were disallowed in the notice
of deficiency.  Petitioners claim that they are entitled to the
deductions because the underlying expenses were incurred by
petitioner in carrying on a trade or business as a self-employed
professional engineer.  See sec. 162(a).  We disagree.

Petitioner did not earn any income or provide any services
as an engineer during either year in issue.  The expenses
deducted on the Schedules C relate primarily to his attempts to
find employment.  As we view the matter, the expenses that
underlie the Schedule C deductions are properly characterized as
job hunting expenses.  During temporary periods of unemployment,
job hunting expenses can be considered and deducted as trade or
business expenses if the expenses are incurred during "a

reasonable period of transition" between leaving one position and obtaining another. Haft v. Commissioner, 40 T.C. 2, 6 (1963); see also Sherman v. Commissioner, T.C. Memo. 1977-301.

In this case, petitioner retired as an engineer from the USAF in 1989. He apparently was employed in some capacity as an engineer for an undisclosed period in 1991, and he remained unemployed from then throughout the years in issue until January 1999, when he was again employed as an engineer by the USAF, this time as a civilian. As of the beginning of 1995, petitioner had been unemployed for at least 3 years. We think that the "reasonable period of transition" that began at the conclusion of petitioner's 1991 job expired sometime before the beginning of 1995. Consequently, as of the beginning of 1995, petitioner would no longer be considered to be carrying on a trade or business within the meaning of section 162(a).

Moreover, even if we were to find that petitioner was engaged in a trade or business during the years in issue, other grounds exist for disallowing particular deductions. For example, because petitioners reported no gross income from that trade or business, no deductions attributable to the office in petitioners' home would be allowable. See sec. 280A. The deductions claimed for travel and meals expenses relate primarily to several trips each year to Birmingham, Alabama, Williamsburg, Kentucky, and Columbia, Missouri. According to petitioner, those

trips were taken for employment-related purposes.  On those occasions when Carolyn R. Ellis accompanied petitioner, he explained that she did so as his "advisor".  We think it more likely than not that the trips were taken primarily for personal purposes; that is, so that one or both petitioners could visit their children.  The expenses of those trips constitute nondeductible personal or family expenses.  See sec. 262. The car expense deduction is allowable only if petitioner maintained substantiating records.  See secs. 274(d), 280F. Assuming, without finding, that petitioner's records otherwise satisfy the requirements of section 274(d) and the regulations promulgated thereunder, we reject them as unreliable. Petitioner's records indicate that he drove to the offices of one prospective employer numerous times during 1995; the prospective employer claims no contacts were made.  Similarly, other prospective employers could not confirm petitioner's claims to have contacted them during the years in issue.  Rejecting petitioner's substantiating records, in effect, operates to deny any deduction for car expenses.

We could continue to discuss other deductions claimed on the Schedules C, but given our conclusion that the expenses are not deductible as trade or business expenses in the first place, we see little purpose in doing so.  Respondent's adjustments

disallowing all of the deductions claimed on the Schedules C are sustained.

B. <u>Charitable Contribution Deductions</u>

Petitioners claimed charitable contribution deductions of $8,382 and $10,827, for 1995 and 1996, respectively, on the Schedules A included with their returns for those years. For each year, they indicated that the contributions were made in cash; but at trial, they claimed that some contributions consisted of donations of personal property and some portion of the deductions was attributable to transportation expenses.

In general, a taxpayer is allowed to deduct any contributions or gifts made to qualifying organizations for their use. See sec. 170(a). Subject to various exceptions, if property other than money is donated, "the amount of the contribution is the fair market value of the property at the time of the contribution". Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.

Section 1.170A-13(a)(1), Income Tax Regs., requires that charitable contribution deductions be substantiated by at least one of the following:

(i) A canceled check.

(ii) A receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution. A letter or other communication from the donee charitable organization acknowledging receipt of a contribution and showing the date and amount of the contribution constitutes a receipt * * *.

(iii) In the absence of a canceled check or receipt from the donee charitable organization, other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.

If the donation is a small amount, any written or other evidence from the donee charitable organization acknowledging receipt is generally sufficient. The reliability of the records is determined on the basis of all relevant facts and circumstances. See sec. 1.170A-13(a)(2)(i)(C), Income Tax Regs.

At trial, petitioners did not indicate how much of the claimed deduction for each year consisted of cash donations and how much consisted of donations of personal property. Instead, in addition to petitioner's generalized testimony regarding their contributions practices, they produced as substantiation for the deductions: (1) Computer-generated summaries; (2) carbon copies of checks written to various organizations, including, among others, the Church and the Baptist Health Association; (3) receipts for donations to various organizations, including the

Church, the Christian Coalition, the Family Research Council, Focus on the Family, the Forest Ridge Cub Scouts, and Goodwill Industries; and (4) receipts for the purchase of various items of personal property, which according to petitioners, were donated directly to needy families, or to organizations that distributed the donated property to needy families. Also, at trial petitioners claimed that a portion of their charitable contribution deduction for each year consists of transportation expenses that petitioner incurred to fulfill his obligations as an official of the Church.

We question the reliability of the carbon copies of checks presented as substantiation for various cash contributions. For the year 1995, there are carbon copies of 11 checks, each for $250, made payable to the Baptist Health Foundation. According to that organization, no donations were made by petitioners during that year. Petitioner did not explain this inconsistency at trial. Ignoring the carbon copies of the checks, and taking into account the receipts from the various organizations, we find that for the year 1995, petitioners are not entitled to a charitable contribution deduction greater than the amount allowed by respondent. We further find that petitioners are entitled to a charitable contribution deduction for the year 1996 in an amount computed as follows:

| | |
|---|---:|
| Cash contributions to the Church | $3,705.00 |
| Cash donations to other organizations | 863.48 |
| Transportation expenses (see sec. 1.170A-1(g), Income Tax Regs.; Rev. Proc. 95-54, 1995-2 C.B. 450) | 463.20 |
| Personal property donated to the Church | 659.99 |
| Personal property donated to other organizations | 571.25 |
| Total | 6,262.92 |

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing and respondent's concession of the section 6663 penalty for each year,

An appropriate order will be issued, and decision will be entered under Rule 155.